JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California  92101-6128
Telephone:  (619) 699-5995
FAX (619) 699-5996
Attorney for Defendant LUNA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR1249TJW |
| | ) | |
| Plaintiff, | ) | DATE: July 28, 2008 |
| | ) | TIME: 9:00 a.m. |
| v. | ) | |
| | ) | |
| ROBERTO LUNA-GUEVARA, | ) | MOTIONS TO SUPPRESS |
| | ) | STATEMENTS; FOR SWEARING |
| | ) | AND OATH OF ALLEGIANCE |
| Defendant. | ) | CEREMONY |
| | ) | |

TO:  KAREN HEWITT, UNITED STATES ATTORNEY;
     NICOLE JONES, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on July 28, at 9:00 a.m., or as soon thereafter as counsel may be heard, the defendant, Roberto Luna-Guevara, by and through his counsel, Kerry Bader, will ask this Court to enter an order granting the motions listed below.

//
//
//
//
//
//
//

1

1

**MOTIONS**

2      Defendant, Roberto Luna-Guevara, by and through his attorney,

3  Kerry Bader, pursuant to the United States Constitution, the Federal

4  Rules of Criminal Procedure, and all other applicable statutes, case

5  law and local rules, hereby moves this Court for an order to:

6      1)   suppress evidence

7      and

8      2)   swearing and oath of allegiance ceremony.

9      This motion are based upon the instant motion and notice of

10  motion, the attached statement of facts and memorandum of points and

11  authorities, and any and all other materials that may come to this

12  Court's attention at the time of the hearing on this motion.

13                          Respectfully submitted,

14

15  Dated:  July 24, 2008          **/s/Joan Kerry Bader**
                                   **JOAN KERRY BADER**
16                                 Attorney for Defendant LUNA

17

18

19

20

21

22

23

24

25

26

27

28

JOAN KERRY BADER
California State Bar No. 172586
964 Fifth Avenue, Suite 214
San Diego, California 92101-6128
Telephone: (619) 699-5995
fax (619)699-5996
Attorney for Defendant LUNA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR1249TJW |
| | ) | |
| Plaintiff, | ) | DATE: July 28, 2008 |
| | ) | TIME: 00;a.m. |
| v. | ) | |
| | ) | STATEMENT OF FACTS AND |
| ROBERTO LUNA-GUEVARA, | ) | MEMORANDUM OF POINTS |
| | ) | AND AUTHORITIES IN SUPPORT |
| Defendant. | ) | OF DEFENDANT'S MOTION |
| _____ | ) | |

**I.**

**STATEMENT OF FACTS**

On or about April 22, 2008, Mr. Luna was arrested at the San Ysidro Port of Entry in the Southern District of California. He has been indicted and is charged with importation of methamphetamine and heroin, a violation of 21 USC sections 952, 960.

Mr. Luna remains incarcerated at the GEO detention facility in San Diego, California.

**II.**

**II.**

**ANY STATEMENTS MADE BY MR. LUNA SHOULD BE SUPPRESSED**

**A.    The Government Failed to Comply With Miranda**

1

08cr1249TJW

1    Mr. Luna was arrested at the San Ysidro Port of Entry.  His

2  statements were taken in violation of the dictates of <u>Miranda v.</u>

3  <u>Arizona</u> and they were made unknowingly, involuntarily and

4  unintelligently. 384 U.S. 436 (1966). As such both his Fifth Amendment

5  right to Due Process and his right to be tried upon "reliable

6  evidence," his Sixth Amendment right to Counsel and his Fourth

7  Amendment right to remain silent have been abridged.  Accordingly, all

8  of his statements must be suppressed.  The transcript of the

9  interrogation is attached, and it raises a significant amount of

10  concern that it should be reviewed.

11    **1.   <u>Miranda Warnings Must Precede Custodial Interrogation.</u>**

12    The Supreme Court has held that the prosecution may not use

13  statements, whether exculpatory or inculpatory, stemming from a

14  custodial interrogation of the defendant unless it demonstrates the

15  use of procedural safeguards effective to secure the privilege against

16  self-incrimination.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).

17  Custodial interrogation is questioning initiated by law enforcement

18  officers after a person has been taken into custody or otherwise

19  deprived of his freedom of action in any significant way.  <u>Id.</u>; <u>see</u>

20  <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969).  Here, Mr. Luna was not

21  free to leave and was under the custody of a federal agent from the

22  minute, if not before the minute, he arrived at the primary inspection

23  at the Port of Entry.

24    A suspect will be held to be in custody if the actions of the

25  interrogating officers and the surrounding circumstances, fairly

26  construed, would reasonably have led him to believe he could not

27  freely leave.  <u>See United States v. Lee</u>, 699 F.2d 466, 468 (9th Cir.

28  1982); <u>United States v. Bekowies</u>, 432 F.2d 8, 12 (9th Cir. 1970).

Once a person is in custody, <u>Miranda</u> warnings must be given prior to any interrogation. <u>See</u> <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. <u>United States v. Bland</u>, 908 F.2d 471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. <u>Miranda</u>, 384 U.S. at 474. <u>See also</u>: <u>Edwards v. Arizona</u>, 451 U.S. 484 (1981).

Within the DVD transcribed recording, the agents are not shy about the fact that they had previously interrogated Mr. Luna prior to the recording. Then, the had him read his rights and told him to sign them, without asking if he wanted to waive them or not. As Mr. Luna rights were violated, all statements must be suppressed as they were taken in violation of the dictates of <u>Miranda</u>.

**B. The Government Must Demonstrate That Mr. Luna's Statements Were Made Voluntarily, Knowingly, and Intelligently.**

When interrogation continues without the presence of an attorney, and a statement is taken, *a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel.* <u>Miranda</u>, 384 U.S. at 475 (italics added).

There was no lawful waiver in this case. It is undisputed that a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily in order to be effective. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973). The standard of proof for a waiver of this constitutional right is high. <u>Miranda</u>, 384 U.S. at 475. *See* <u>United states v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984). The burden on the government is great and the

3                                      08cr1249TJW

1    court must indulge every reasonable presumption against waiver of

2    fundamental constitutional rights. Id.

3       Here, the agent told Mr. Luna to sign; there was no request or

4    inquiry as to whether he actually *wanted to sign or understood his*

5    *rights.*

6       The court must make a two-pronged inquiry: 1. The statement must

7    be given voluntarily in the sense that it was the "product of a free

8    and deliberate choice rather than the result of intimidation, coercion

9    or deception;" and 2. The waiver must be *knowing and intelligent*, in

10   the sense that it was "made *with a full awareness of the nature of the*

11   *right being abandoned and the consequences of the decision to abandon*

12   *it.*" Moran v. Burbine, 475 U.S. 412, 421 (1986)(italics added);

13   United States v. Sriyuth, 98 F.3d 739, 748-749 (3d. Cir 1996).

14      Here, the DVD showing the interrogation proves that Mr. Luna did

15   not make a knowing, or intelligent waiver of his right to remain

16   silent and his right to counsel.  He was not made aware of the rights

17   he was abandoning.  Instead, he was told over and over again that the

18   questioning was just his "opportunity" to be honest so they could

19   really to the judge his statements and that" and that the agents were

20   just gathering information for a report.  Mr. Luna told the agents,

21   when he could manage to get a word in, that he was extremely dizzy and

22   did not have his medication, and that he is a diabetic.

23      The bulk of the 68-page transcription is essentially the agents

24   telling Mr. Luna how drug trafficking organizations operate and what

25   he should say so that they could relay a better-sounding story to the

26   judge and to his family.  While the agents testified for Mr. Luna, he

27   said very few things for the bulk of the transcription, and the Court

28

4                                    08cr1249TJW

will see "uh huh" throughout the transcript. <u>Edwards v. Arizona</u>, 451

U.S. 477, 485 (1981)

> [A]ny evidence that the accused was threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation. <u>Miranda v. Arizona</u>, 384 U.S. 436, 476 (1968).

> The Supreme Court has consistently held that "waivers of counsel *must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right* or privilege, a matter which *depends in each case* "*upon* the particular facts and circumstances surrounding that case, including the background, experience and *conduct of the accused*." *Johnson v. Zerbst*, 304 U.S., 458, 464 (1938); *See Faretta v. California*, 422 U.S. 806, 835 (1975); *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979); *Brewer v. Williams*, 430 I.S. 387, 404 (1977); *Fare v.Michael C.*, 422 U.S. 707, 724-725 (1979). <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981)(emphasis added).

> Any system of administration which permits the prosecution to trust habitually to compulsory self-disclosure as a source of proof must itself suffer morally thereby. The inclination develops to rely mainly upon such evidence, and to be satisfied with an incomplete investigation of the other sources. The exercise of power to extract answers begets a forgetfulness of the just implications of that power. *The simple and peaceful process of questioning breeds a readiness to resort to bullying* and to physical force and torture. If there is a right to an answer, there soon seems to be a right to the expected answer, – that is, to a confession of guilt. Thus the legitimate use grows into an unjust abuse; ultimately, the innocent are jeopardized by the encroachments of a bad system. Such seems to have been the course of experience in those legal systems where the privilege was not recognized. 8 Wigmore Evidence (3d ed. 1940), 309 (emphasis added).

Here there was bullying – the agents testified for Mr. Luna as to

what the facts should be and he simply sat there and said, "uh huh"

until about page 58. Who knows of Mr. Luna thought he was helping to

1  generate a "report" or that he was consciously giving up his right to

2  remain silent and to refrain from incriminating himself.

3

4              The due process test takes into consideration the
            "totality of all the surrounding circumstances – both the
5          characteristics of the accused and the details of
           interrogation." *Ibid.* See also, *Haynes, supra,* at 513,
6          *Gallegos v. Colorado*, 370 U.S. 49, 55... (1962); *Reck v.
           Pate, 367 U.S. 433, 440 ... (1961)("All the attendant
7          circumstances upon the confession must be taken into
           account."};* Malinski v. New York, 324 U.S. 401, 404
8          ...(1945)("If all the attendant circumstances indicate that
           the confession was coerced or compelled, it may not be used
9          to convict a defendant").  The determination "depends upon a
           weighing of the circumstances of pressure against the power
10         of resistance of the person confessing." *Stein v. New York*,
           346 U.S. 156, 185 ... (1953). <u>Dickerson v. United States</u>,
11         530 U.S. 428, 433 (2000).

12      So, not only was the "waiver" involuntary, it was not knowingly

13  and intelligently made.

14      As the Court has said, we "indulge every reasonable presumption

15  against a waiver of fundamental rights" whether they be the right to

16  counsel or the right to remain silent."  And we "do not presume

17  acquiescence in the loss of fundamental rights." <u>Johnson v. Zerbst</u>,

18  304 U.S. 458, 466 (1938).

19      All of what happened here in this DVD contravenes the Self

20  Incrimination Claus: "No person... shall be compelled in any criminal

21  case to be a witness against himself." U.S. Const., Amdt. 5.

22      As the Supreme Court has said, "the core protection afforded by

23  the Sel-Incrimination Clause is a prohibition on compelling a criminal

24  defendant to testify against himself at trial....[citations omitted]

25  J.McNaughton rev. ed 1961)(explaining that the Clause was "directed at

26  the employment of legal process to *extract from the person's own lips*

27  *an admission of guilt*, which would thus take the place of other

28  evidence")..." <u>United States v. Patane</u>, 542 U.S. 630 (2004).

1    Here, Mr. Luna' was convinced, after extraordinary effort that he

2  should speak, without once being told that his statements would be

3  used in a <u>criminal trial</u> against him.  When viewing the DVD, the

4  viewer is reminded of the police tactics that the <u>Miranda</u> Court sought

5  to dispel, *i.e.* the use of police interrogation methods spelled out in

6  their manuals, "emphasizing the most effective psychological

7  stratagems to employ during interrogations":

8    The officers are told by the manuals that the "principal

9  psychological factor contributing to successful interrogation is

10  *privacy* – being alone with the person under interrogation.  The

11  efficacy of this tactic is as follows:

> If at all practicable, the interrogation should take place
> in the investigator's office or at least in the room of his
> choice.  The subject should be deprived of every
> psychological advantage.  In his home he may be confident,
> indignant or recalcitrant.  He is more keenly aware of his
> rights and more reluctant to tell of his indiscretions or
> criminal behavior within the walls of his home.  Moreover
> his family and other friends are nearby, their presence
> lending moral support.  In his own office, the investigator
> possesses all the advantages/ the atmosphere suggests the
> invincibility of the forces of law.
>     To highlight the isolation and unfamiliar surroundings,
> the manuals instruct the police to display an air of
> confidence in the suspect's guilt and from outward
> appearance to maintain only an interest in confirming
> certain details.  The guilt of the subject is to be posited
> by fact.  The interrogator should direct his comments toward
> the reasons why the subject committed the act, rather than
> court failure by asking the subject whether he did it.  Like
> other men, perhaps the subject has had a bad family life,
> had an unhappy childhood, had too much to drink, had an
> unrequited desire for women the officers are instructed to
> minimize the moral seriousness of the offense, to cast blame
> on the victim on the victim or on society.  These tactics
> are designed to put the subject in a psychological state
> where his story is but an elaboration of what the police
> purport to know already --  that he is guilty.  Explanations
> to the contrary are dismissed and discouraged.  <u>Miranda</u>, 384
> U.S. at 450-451.

7

1    The validity of the waiver depends upon the particular facts and
2    circumstances surrounding the case, including the background,
3    experience, and conduct of the accused.  <u>Edwards v. Arizona</u>, 451 U.S.
4    477, 472 (1981); <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1983).  <u>See</u>
5    <u>also</u> <u>United States v. Heldt</u>, 745 F.2d at 1277; <u>United States v.</u>
6    <u>McCrary</u>, 643 F.2d 323, 328-29 (9th Cir. 1981).
7        In <u>Derrick v. Peterson</u>, 924 F.2d 813 (9th Cir. 1990), the Ninth
8    Circuit confirmed that the issue of the validity of a <u>Miranda</u> waiver
9    requires a two prong analysis:  the waiver must be both (1) voluntary
10   and (2) knowing and intelligent.  <u>Id.</u> at 820.  The voluntariness prong
11   of this analysis "is equivalent to the voluntariness inquiry under the
12   [Fifth] Amendment . . . ."  <u>Id.</u>  <u>See infra</u>.
13       The second prong, however, requiring that the waiver be "*knowing*
14   *and intelligent," mandates an inquiry into whether "the waiver [was]*
15   *made with a full awareness both of the nature of the right being*
16   *abandoned and the consequences of the decision to abandon it.*"  <u>Id.</u> at
17   820-21 (quoting <u>Colorado v. Spring</u>, 479 U.S. 564, 573 (1987)).  This
18   inquiry requires that the court determine whether "the requisite level
19   of comprehension" existed before the purported waiver may be upheld.
20   <u>Id.</u>  Thus, "*[o]nly if the `totality of the circumstances surrounding*
21   *the interrogation' reveal <u>both</u> an uncoerced choice <u>and</u> the requisite*
22   *level of comprehension may a court properly conclude that the <u>Miranda</u>*
23   *rights have been waived.*"  <u>Id.</u> (quoting <u>Colorado v. Spring</u>, 479 U.S.
24   at 573)  (citations omitted) (emphasis in original)).  Emphasis added.
25       Even when the procedural safeguards of <u>Miranda</u> have been
26   satisfied, a defendant in a criminal case is deprived of due process
27   of law if the conviction is founded upon an involuntary confession.
28   <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v. Denno</u>, 378 U.S.

1  368, 387 (1964). The government bears the burden of proving that a

2  confession is voluntary by a preponderance of the evidence. <u>Lego v.</u>

3  <u>Twomey</u>, 404 U.S. 477, 483 (1972).

4       The Court must examine all "the surrounding circumstances and the

5  entire course of police conduct." <u>Oregon v. Elstad</u>, 470 U.S. 298

6  (1985); <u>Missouri v. Seibert</u>, 542 U.S. 298 (2004).

7       The Court must also look at the coercive pressures that can be

8  brought to bear upon a suspect in the context of custodial

9  interrogation. <u>Berkmere v. McCarty</u>, 468 U.S. 420 (1984).

10      The Supreme Court is cognizant of interrogations such as that

11  which took place here. In <u>Dickerson v. United States</u>, the Court

12  stated:

13          In *Miranda*, we noted that the advent of modern
            custodial interrogation brought with it increased concern
14          about confessions obtained by coercion. 384 U.S at 445-458.
            Because custodial police interrogation, by its very nature,
15          isolates and pressures the individual, we stated that "even
            without employing brutality, the 'third degree' or [other]
16          specific strategems,... custodial interrogation exacts a
            heavy till on ondividual liberty and trades on the
17          weaknesses of individuals. 530 U.S. 428 434-435 (2000).

18

19      The standard for determining if a confession was voluntarily

20  given is whether "the confession is a product of an essentially free

21  and unconstrained choice by its maker." <u>Beecher v. Alabama</u>, 499 U.S.

22  279 (1991). In determining whether a defendant's will was overborne

23  in a particular case, the totality of the circumstances must be

24  considered. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973).

25      Here, Mr. Luna never intelligently or voluntarily waived his

26  rights and he was never accurately advised of the critical rights he

27  was being told to give up.

28  **C.   <u>This Court Should Conduct An Evidentiary Hearing</u>**.

9

It is anticipated that the government will argue that it need not present evidence in support of its position that the <u>Miranda</u> motion should be denied because the defense has not submitted a declaration. The government's position is contrary to the framework established in <u>Miranda</u>. First, requiring the defense to come forward with factual information shifts the burden of proof. It is the government, not the defense, that bears the burden of proof.

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant <u>unless it demonstrates</u> the use of procedural safeguards effective to secure the privilege against self-incrimination.

<u>Miranda v. Arizona</u>, 384 U.S. at 444 (emphasis added). Thus, far from requiring the defense to come forward with anything, <u>Miranda</u> squarely places the burden on the government.

Similarly, it is the government that bears the burden of proving a valid waiver.

> If the interrogation continues without the presence of an attorney and a statement is taken, <u>a heavy burden rests on the government</u> to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

<u>Id.</u> at 475 (citing <u>Escobedo v. Illinois</u>, 378 U.S. 478, 490 n.14 (1963) (emphasis added)).

This "heavy burden," <u>id.</u>, cannot be met absent evidence of proper warnings and a knowing and intelligent waiver.

> "Presuming a waiver from a silent record is impermissible. The record must show, or there must be an allegation <u>and</u> evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver."

<u>Id.</u> (quoting <u>Carnley v. Cochran</u>, 369 U.S. 506, 516 (1942) (emphasis added)). Thus, both an allegation and evidence are required.

08cr1249TJW

1    The government's anticipated contention that there are no

2    contested factual issues is also wrong.

3    Whatever the testimony of the authorities as to waiver of
     rights by an accused, the fact of lengthy interrogation or
4    incommunicado incarceration before a statement is made is
     strong evidence that the accused did not validly waive his
5    rights.  In these circumstances the fact that the individual
     eventually made a statement is consistent with the
6    conclusion that the compelling influence of the
     interrogation finally forced him to do so.

7
     Id. at 476 (emphasis added).
8
         In short,
9
     [t]he warnings required and the waiver necessary in
10   accordance with [the Miranda] opinion . . . are, in the
     absence of a fully effective equivalent, prerequisites to
11   the admissibility of any statement made by a defendant.

12   Id.  If the government fails to meet these requirements, the

13   statements are not admissible.  Merely claiming, in a responsive

14   pleading, that warnings were provided and that there was a waiver is

15   simply inadequate.

16   In dealing with custodial interrogation, we will not presume
     that a defendant has been effectively apprised of his rights
17   and that his privilege against self-incrimination has been
     adequately safeguarded on a record that does not show that
18   any warnings have been given or that any effective
     alternative has been employed.  Nor can a knowing and
19   intelligent waiver of these rights be assumed on a silent
     record.

20
     Id. at 498-99.  Consequently, this Court should require the government
21
     to prove its case.
22
         In addition, this Court must also determine whether the warnings
23
     provided were adequate.  See United States v. Bland, 908 F.2d 471,
24
     473-74 (9th Cir. 1990), cert. denied, 113 S. Ct. 170 (1992); United
25
     States v. Noti, 731 F.2d 610, 614-15 (9th Cir. 1984).  If no evidence
26
     of the content of warnings is presented, this Court cannot meet this
27
     obligation.
28

                                  11                          08cr1249TJW

This Court is also required to conduct an evidentiary hearing under 18 U.S.C. § 3501(a) to determine, outside the presence of the jury, whether any statements made by Mr. Gonzalez are voluntary.

Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12.  See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

### III.

### MOTION FOR OATH OF ALLEGIANCE AND NATURALIZATION

Mr. Luna-Guevara, pursuant to Rule 17(b) of the Federal Rules of Criminal Procedure, the Sixth Amendment to the United States Constitution and the Criminal Justice Act, 8 USC section 1421, *et. seq.*, hereby requests that this Court administer an oath of naturalization so that Mr. Luna, the Defendant in this matter, may become a United States citizen.

Mr. Luna references 8 USC section 1421(b)(1) and (b)(5) which authorizes this Court administer the oath of allegiance to the United States.  Mr. Luna's naturalization application was approved by the Attorney General in December 1996 (see attached documents from the INS Citizenship Unit and see 8 USC section 1421).  Mr. Luna was advised he would be scheduled for the next available oath of allegiance ceremony in Los Angeles.  However, he did not receive a notice.  At this time,

12

08cr1249TJW

he respectfully asks this Court to take his oath of allegiance and to swear him in as a United States citizen.

Mr. Luna has lived, worked and raised children in the United States for nearly thirty years.  He became a Lawful Permanent Resident and two of his three adult children are United States citizens as is his wife, Maria Elena Luna.  All of his grandchildren are United States citizens.   Mr. Luna has had a career in painting cars for most of his adult life.  He worked for One-Day Painting and Autobody throughout the United States and he freelanced for years.  Mr. Luna is 56 years old.  He was recently diagnosed with diabetes and because he was not aware of the late-onset diabetes his health has suffered, as shown by the attached documents generated by the Medical Department at the Metropolitan Correctional Center and Alvarado Hospital, both here in San Diego, California.  Mr. Luna is blind in one eye and he is his losing sensory capacity in his feet.  In addition, he has been placed under the care of physicians who recommend that his lungs be checked by ultrasound or CAT scan  within six months.

**VI.**

**CONCLUSION**

For the foregoing reasons, Mr. Luna respectfully requests that the Court grant his motions.

Dated:  July 24, 2008            Respectfully submitted,

                                 /s/Joan Kerry Bader

                                 JOAN KERRY BADER

                                 Attorney for Defendant Luna

13

08cr1249TJW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08cr1249TJW

# WE WILL RESPOND TO YOU BY
# MAIL

## INS CITIZENSHIP UNIT

300 North Los Angeles Street
Los Angeles, CA 90012
ATTN: ROOM 8010 8TH FLOOR

**DROP-OFF
INQUIRY**

INS USE ONLY

### Action requested on Naturalization Application:

☐ Check Status  ☒ Change Mailing Address  ☐ Reschedule Appointment  ☐ Other

Mailing Address:

_Roberto Luna Guzman_
(Name)
_2016 E. 77 ·ST #1_
(Address)
_Los Angeles CA 90001_
(City, State, Zip Code)

Date application was last submitted: _____

Comments:

Today's Date: _Oct. 6. 1997_

Alien Number: _A 092 074 681_

Date of Birth: _9/20/ 53_

Phone: _213 587 0530_

Interview Date (if any): _____

_____
_____

### THIS SECTION FOR OFFICIAL INS RESPONSE

☐ Please allow one year from the date you submitted your application to be scheduled for interview.

☒ You will receive an appointment within the next 90 days.

☐ We have no record of this application. Please complete and return the enclosed application with fingerprints, photos and proof of prior fee payment (canceled money order or check). We apologize for the inconvenience and will make every effort to process your case within 90 days of receipt.

☐ Your personal appearance is required to complete processing on this case. Please bring this notice to Room 8010 within 30 days. Office hours are 7:00 - 3:30, M-F except holidays.

☐ We need more time to process this inquiry. Please allow an additional 4-6 weeks for response. Other: _Submitted. print_

Processed by: _____ Date: _____

**U.S. DEPARTMENT OF JUSTICE**
Immigration and Naturalization Service

LOS ADN 316.1

300 North Los Angeles Street
Los Angeles, CA 90012

Don Avalos

DATE: DEC X 5 1996
NAME: Roberto Luna - G
FILE: A 92-078-68

Dear Naturalization Applicant:

Congratulations! Your application for naturalization has been approved.

To complete the naturalization process, you must now take the oath of allegiance before a judge of the United States District Court. You will be scheduled for the next available ceremony in your area, or at the Los Angeles Convention Center.

Naturalization ceremonies are held every month; however, it is not possible at this time to advise you which ceremony you will attend. You will receive an appointment notice by mail at least 10 days prior to your ceremony. Please do not appear at any ceremony until you receive an appointment notice.

If your mailing address changes, or if you do not receive an appointment notice within 90 days from the date of this letter, please notify us by writing to:

INS Citizenship
300 N. Los Angeles St., Room 8010
Los Angeles, CA 90012

Once again, congratulations on passing your citizenship interview.

Sincerely,

*Jane E. Arellano*

ne B. Arellano
istant District Director
dications

| | |
|---|---|
| 1. LAST NAME - FIRST NAME - MIDDLE NAME<br>LUNA - GUEVARA , ROBERTO | 2. IDENTIFICATION NUMBER<br>08270-248 | 3. GRADE AND COMPONENT OR POSITION |

| 4. HOME ADDRESS (Number, street or RFD, city or town, state and ZIP Code) | 5. EMERGENCY CONTACT (Name and address of contact)<br>08270-298 |
|---|---|

| 6. DATE OF BIRTH<br>9 20 53 | 7. AGE<br>yr | 8. SEX<br>FEMALE ☒ MALE | 9. RELATIONSHIP OF CONTACT |
|---|---|---|---|

| 10. PLACE OF BIRTH | 11. RACE<br>☐ WHITE ☐ BLACK ☐ AMERICAN INDIAN/ALASKA NATIVE ☐ HISPANIC WHITE ☐ HISPANIC BLACK ☐ ASIAN/PACIFIC ISLANDER |
|---|---|

| 12a. AGENCY<br>Department of Justice | 12b. ORGANIZATION UNIT<br>Bureau of Prisons | 13. TOTAL YEARS GOVERNMENT SERVICE |
|---|---|---|
| | | a. MILITARY | b. CIVILIAN |

| 14. NAME OF EXAMINING FACILITY OR EXAMINER, AND ADDRESS<br>MCC San Diego<br>808 Union St<br>San Diego, CA 92101 | 15. RATING OR SPECIALTY OF EXAMINER |
|---|---|
| | 16. PURPOSE OF EXAMINATION<br>Routine Physical |

## 17. CLINICAL EVALUATION

| NOR-MAL | (Check each item in appropriate column, enter "NE" if not evaluated.) | ABNOR-MAL | NOR-MAL | (Check each item in appropriate column, enter "NE" if not evaluated.) | ABNOR-MAL |
|---|---|---|---|---|---|
| | A. HEAD, FACE, NECK AND SCALP | | NE | O. PROSTATE (Over 40 or clinically indicated) | |
| | B. EARS - GENERAL (INTERNAL CANALS)<br>(Auditory acuity under items 39 and 40) | | NE | P. TESTICULAR | |
| ✓ | C. DRUMS (Perforation) | | NE | Q. ANUS AND RECTUM (Hemorrhoids, Fistulae) (Hemocult Results) | |
| ✓ | D. NOSE | | | R. ENDOCRINE SYSTEM | |
| ✓ | E. SINUSES | | NE | S. G-U SYSTEM | |
| ✓ | F. MOUTH AND THROAT | | ✓ | T. UPPER EXTREMITIES (Strength, range of motion) | |
| | G. EYES - GENERAL (Visual acuity and refraction under items 28, 29, and 36) | ✓ | | U. FEET | |
| | H. OPTHALMOSCOPIC | ✓ | | V. LOWER EXTREMITIES (Except feet) (Strength, range of motion) | ✓ |
| ✓ | I. PUPILS (Equality and reaction) | | | W. SPINE, OTHER MUSCULOSKELETAL | |
| ✓ | J. OCULAR MOTILITY (Associated parallel movements nystagmus) | | ✓ | X. IDENTIFYING BODY MARKS, SCARS, TATTOOS | |
| ✓ | K. LUNGS AND CHEST | | | Y. SKIN, LYMPHATICS | |
| ✓ | L. HEART (Thrust, size, rhythm, sounds) | | | Z. NEUROLOGIC (Equilibrium tests under item 41) | |
| ✓ | M. VASCULAR SYSTEM (Varicosities, etc.) | | | AA. PSYCHIATRIC (Specify any personality deviation) | |
| ✓ | N. ABDOMEN AND VISCERA (Include hernia) | | NA | BB. BREASTS | |
| | | | | CC. PELVIC (Females only) | |

NOTES: (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 42 and use additional sheets if necessary.)

Gt: (R) eye - no eye _____ (_____)
w/u: _____ w/ pedal edema

## 18. DENTAL (Place appropriate symbols, shown in examples, above or below number of upper and lower teeth.)

| | REMARKS AND ADDITIONAL DENTAL DEFECTS AND DISEASES |
|---|---|
| | DENTAL<br>SCREENING DONE |

RIGHT

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |

LEFT

## 19. TEST RESULTS (Copies of results are preferred as attachments)

| 1. URINALYSIS: (1) SPECIFIC GRAVITY N/A | | B. CHEST X-RAY OR PPD (Place, date, film number and result)<br>5/12/08 - 2 ____ slight dilatation of |
|---|---|---|
| 2) URINE ALBUMIN N/A | (4) MICROSCOPIC | |
| 3) URINE SUGAR N/A | N/A | PPD: MCC CXR: interstitial disease |
| 2. SYPHILIS SEROLOGY (Specify test used and results) | D. EKG | E. BLOOD TYPE AND RH FACTOR | F. OTHER TESTS |
| RPR: N/A | N/A | N/A | N/A |

STANDARD FORM 88 (Rev. 10-94) (EG)<br>Prescribed by GSA/ICMR FIRMR (41 CFR) 201-9.202-1

08270-298

<u>ALVARADO HOSPITAL</u>
San Diego, California 92120

**CONSULTATION**

Visit #: 5931452
MR #: 723839
Patient: LUNAGUEVARA, ROBERTO
Location: 4S 0430/A
Admitting Physician: Kumara S. Prathipati, MD
Admit Date: 05/09/2008
Consultation Date: 05/15/2008
Page 3

**NEUROLOGIC:** Cranial nerves 2 through 12 were grossly intact.
**CARDIAC:** S1, S2.
**LUNGS:** Clear anteriorly.
**ABDOMEN:** Soft.
**EXTREMITIES:** No obvious edema.

**DIAGNOSTIC STUDIES:** Laboratory data was reviewed in detail. The
patient had a normal CBC, sedimentation rate is 3, ESR is 3. Chest
CT, which was reviewed in detail, showed borderline mediastinal and
hilar lymphadenopathy with subpleural increased
interstitial markings.

Next, bronchoscopy results were reviewed in detail. I spent time
looking at these images. There was a small vascular, reddish lesion
at the carina along the posterior surface. This appears to be a
vascular lesion. There was some extension in the subcutaneous
tissues. It was reddish, and in fact did not appear to be a
exophytic neoplasm. I think it was probably a vascular abnormality
or a small hemangioma. There was no disruption of the tracheal
rings, and no extrusion into the lumen of the trachea.

**IMPRESSION**
Mr. Lunaguevara is a 54-year-old male with weight loss, abnormal
chest CT, and current rule out TB. I was asked to evaluate the
patient for abnormal trachea finding.

DEBRA LACY, MD

**PLAN:** At this point, I think that this is probably represents a
vascular anomaly or a anatomic variant. It could also
possible represent a hemangioma or a arteriovenous malformation.
However, I do not believe that these lesion warrants biopsy. If it
is vascular, it may cause significant bleeding and put the patient at
risk for aspiration or hemorrhage. I would recommend a serial
bronchoscopy and I would probably repeat the bronchoscopy on this
patient in 3-6 months to rule out the possibility of change. Should
he have any change in the lesion, then I would recommend that he have
a biopsy performed with laser available to control bleeding if this
occurs. Furthermore, he should have a repeat CAT scan at the time of

**ORIGINAL**

08270-298

ALVARADO HOSPITAL
San Diego, California 92120

CONSULTATION

Visit #: 5931452
MR #: 723839
Patient: LUNAGUEVARA, ROBERTO
Location: 4S 0430/A
Admitting Physician: Kumara S. Prathipati, MD
Admit Date: 05/09/2008
Consultation Date: 05/15/2008
Page 4

his repeat bronchoscopy.  I will be available to help perform with
biopsy and laser if needed in the future.

I would like to kindly thank my Dr. Tiruviluamala for allowing me to
participate in the care of this patient.

BW:tc
D:  05/20/2008 6:34 AM
T:  05/21/2008 2:28 AM
JOB: 35377

_____
Brian H. Weeks, MD

ORIGINAL

# WESTCLIFF
## MEDICAL LABORATORIES, INC.

**LABORATORY REPORT**

DIRECTORS
Pravcena Yatur, M.D.
William Temple, M.D.

SRCFC: 04233
MCC SAN DIEGO
ATTN: J. TORRES
808 UNION ST.
SAN DIEGO CA 92101

PATIENT: **LUNA-GUEVARA, ROBERTO**
DOB: 09/02/53  AGE: 54Y SEX: M
PT. PHONE:
REF. DR.: LACY, DEBRA, M.D.
MRN/OTHER# 08270-298

REQ#: R0811701346
ADVANTAGE#: 04164090
COLLECTED: 04/24/08
REPORTED:  04/29/08 06:08

| TEST | LOW | RESULT | HIGH | NORMAL RANGE | |
|------|-----|--------|------|--------------|--|

## GENERAL CHEMISTRY

| TEST | LOW | RESULT | HIGH | NORMAL RANGE | |
|------|-----|--------|------|--------------|--|
| Glucose[1] | | | 153 H | 65-99 | mg/dL |
| BUN | | 14 | | 8-24 | mg/dL |
| Creatinine | | 0.7 | | 0.6-1.4 | mg/dL |
| GFR - Non African American | | >60.0 | | | |
| GFR - African American | | >60.0 | | | |
| BUN/Creatinine Ratio | | 20 | | 6-25 | |
| Sodium | | 146 | | 131-150 | mEq/L |
| Potassium | | 4.8 | | 3.5-5.5 | mEq/L |
| Chloride | | 102 | | 95-108 | mEq/L |
| Calcium | | 10.1 | | 8.5-10.6 | mg/dL |
| Total Protein | | 7.6 | | 6.0-8.5 | g/dL |
| Albumin | | 4.3 | | 3.5-5.0 | g/dL |
| Globulin (Calc) | | 3.3 | | 1.8-3.8 | g/dL |
| A/G Ratio (Calc) | | 1.3 | | 1.1-2.5 | |
| Bilirubin, Total | | 0.4 | | 0.1-1.4 | mg/dL |
| Alkaline Phosphatase | | 55 | | 30-140 | IU/L |
| AST/SGOT | | 26 | | 0-48 | u/L |
| ALT/SGPT | | 40 | | 0-52 | u/L |
| Osmolality-Serum (Calc) | | | 306 H | 278-305 | mOsm/kg |
| Ionized Calcium (Calc) | | 4.3 | | 3.9-4.7 | mg/dL |
| Bicarbonate (CO2) | | 29 | | 21-31 | mEq/L |
| Hemoglobin A1C | | | 8.4 H | 4.8-5.9 | % |
| Mean Blood Glucose | | 222 | | | md/dL |
| Cholesterol[2] | | 173 | | 140-200 | mg/dL |
| Triglycerides | | | 191 H | 10-190 | mg/dL |
| HDL | 30 L[3] | | | 40-80 | mg/dL |
| LDL (Calc) | | 104[4] | | 66-130 | mg/dL |

[1] Fasting
[2] Fasting
[3] HDL of males greater than 45 mg/dL and females greater than 40 mg/dL have less than average incidence of coronary arterial sclerosis.
[4] LDL - Adult Treatment Plan III Guidelines

| Concentration (mg/dL) | ATP III Interpretative Guidelines |
|-----------------------|-----------------------------------|
| < 100 | Desirable |
| 100 - 129 | Near or above Desirable |
| 130 - 159 | Borderline High |
| 160 - 189 | High |
| >= 189 | Very High |

DEBRA LACY, MD

UNLESS OTHERWISE INDICATED ALL TESTS WERE PERFORMED AT 1821 E. DYER RD., STE. 100, SANTA ANA, CA 92705-5700
• ML 1821 E. Dyer Rd., Ste. 100 • SB 2020 N. Waterman Ste. A • T0 4201 Torrance Blvd., Ste. 240 • GL 1145 S. Grand Ave.
Santa Ana, CA 92705-5700    San Bernardino, CA 92404    Torrance, CA 90503    Glendora, CA 91740
(800) 373-9505 Clinical    (909) 475-5565    (310) 543-0553    (800) 468-7088
(800) 468-7088 Pathology • BH 9735 Wilshire Blvd., Ste. 219 • LN 44725 10th St., Suite 240 • BR 1903 W. Empire Ave.
                              Beverly Hills, CA 90210    Lancaster, CA 93534    Burbank, CA 91504

Page 1 of 3
Final Report

1  JOAN KERRY BADER
   California State Bar No. 172586
2  964 Fifth Avenue, Suite 214
   San Diego, California  92101-6128
3  Telephone:  (619) 699-5995
   FAX (619) 699-5996
4  Attorney for Defendant Luna

5

6                    THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF CALIFORNIA
                   THE HON. THOMAS J. WHELAN
7
   THE UNITED STATES OF          )      CASE NO.08cr1749
8  AMERICA                       )
                                 )      July 28, 2008
9  v.                            )      2:00 p.m.
                                 )      PROOF OF SERVICE
10                               )
   ROBERTO LUNA-GUEVARA,                     )
11            Defendant          )
                                 )
12                               )
   _____)
13 TO:  KAREN HEWITT, UNITED STATES ATTORNEY;
        NICOLE JONES, ASSISTANT UNITED STATES ATTORNEY
14
15      Defendant Roberto Luna-Guevara, by and through his attorney, J.

16 Kerry Bader, hereby files his Motions to suppress and for Swearing in

17 Ceremony and Oath of Allegiance on this date.

18

19 Respectfully submitted,        /s/Joan Kerry Bader
                                  Joan Kerry Bader
20 Dated: July 24, 2008           Attorney for Roberto Luna

21

22

23

24

25

26

27

28

                                 1                        07CR3402